**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TROY H.,[1]
    Plaintiff,

v.                                        Civil No. 3:22-cv-00053-DJN

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). At the time of her application date, Plaintiff was fifty-two years old and previously worked as a certified nursing assistant. (R. at 248, 258, 281.) Plaintiff alleges she is unable to work due to hypertension, irritable bowel syndrome, breast cancer, asthma, anxiety, migraines, carpal tunnel syndrome, congestive heart failure, degenerative joint disease, congestive heart failure, and obstructive sleep apnea. (R. at 128.)

On March 2, 2021, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 29, 32-51.) This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

rendering the matter ripe for review.[2]

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 21) ("Def.'s Mem") be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed concurrent applications for disability insurance and supplemental insurance benefits on February 3, 2020, alleging disability beginning April 20, 2018. (R. at 248, 258.) The SSA denied Plaintiff's claims initially and again upon reconsideration. (R. at 123, 125, 167, 169.) At Plaintiff's request, an ALJ held a telephonic hearing on January 29, 2021, at which Plaintiff, represented by counsel, testified. (R. at 57-87.) On March 2, 2021, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 32-51.) On November 9, 2021, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner. (R. at 2-4.) Plaintiff, now proceeding pro se, seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 1383(c).[3]

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

[3] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for supplemental security income.

## II. STANDARD OF REVIEW

### A. Liberal Construction of Pro se Pleadings.

The court "has an obligation where the petitioner is pro se . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972) (per curiam); *Laber v. Harvey*, 438 F.3d 404, 413 (4th Cir. 2006); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Indeed, the Supreme Court has held that pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Nonetheless, a pro se complaint is still subject to dismissal even under this less stringent standard. *Id.* at 520-21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).

However, a court need not attempt "to discern the unexpressed interest of the plaintiff" nor overlook a clear failure in the pleading to allege a federally cognizable claim. *Laber*, 438 F.3d at 413; *see also Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390-91 (4th Cir. 1990). As explained by the Fourth Circuit, the liberal construction of a pro se complaint does not require district courts to "conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

"This Court generally decides appeals under the [Act] by considering the issues raised and argued in a plaintiff's brief. Courts are not required to guess as to grounds for an appeal, nor are they obliged to scour an evidentiary record for every conceivable error." *Ricks v. Comm'r of Soc. Sec.*, No. 2:09-cv-622, 2010 U.S. Dist. LEXIS 142966, 2010 WL 6621693, at *7 n.7 (E.D. Va.

Dec. 29, 2010) (quoting *Womack v. Astrue*, No. CIV-07-167-W, 2008 U.S. Dist. LEXIS 47579, 2008 WL 2486524, at *5 (W.D. Okla. June 19, 2008)). However, when deciding a social security matter on the merits, a reviewing court should still "scrutinize the record as a whole to determine whether the conclusions reached are reasonable, and whether the hearing examiner applied correct legal standards to the evidence." *Id.* (internal quotations omitted). A claimant's failure to raise an error does not obviate the court's duty to correct blatantly obvious prejudicial errors. Therefore, the undersigned will nonetheless conduct a review of the record to ensure the ALJ made no clear error of law, and that substantial evidence supports the decision.

### B. Substantial Evidence Evaluation.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations,

or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

  **C.**  **The Five-Step Evaluation.**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, ALJs use the "five-step sequential evaluation process" set forth in 20 C.F.R. § 404.1520(a)(4).

To summarize, at step one, the ALJ looks at the claimant's current work activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity,

5

accounting for the most the claimant can do despite her physical and mental limitations. §§ 404.1545(a), 416.925(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 404.1520(e), 416.920(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

Upon review of the ALJ's decision, the Court notes the ALJ properly followed the five-step sequential evaluation process in assessing Plaintiff's disability claim. (R. at 34-51.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

#### A. Step One Findings.

At step one, the ALJ considered whether Plaintiff engaged in substantial gainful activity. (R. at 35.) If a claimant is found to be engaged in substantial gainful activity, then she will be found "not disabled regardless of [her] medical condition or [her] age, education, and work experience." 20 C.F.R. §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as "work activity that is both substantial and gainful." *Id.* §§ 404.1572, 416.972(a). Work activity is "substantial" if it "involves doing significant physical or mental activities," even if on a part-time

basis. *Id.* §§ 404.1572(a), 419.972(a). Work activity is "gainful" if a claimant performs the activity for pay or profit, regardless of whether a profit is realized. *Id.* §§ 404.1572(b), 416.972(b). The ALJ relies on certain factors to determine if the claimant is engaged in substantial gainful activity, including the nature of the claimant's work, how well she performs her work, how much time she spent at work, and whether her work was done under special conditions or in a sheltered workshop. *Id.* §§ 404.1573, 416.973. However, when evaluating whether a claimant engaged in substantial gainful activity, the primary consideration is the claimant's earnings from the work activity. *Id.* §§ 404.1574(a)(1), 416.974(a)(1); SSR 83-33, 1983 SSR LEXIS 34, 1983 WL 31255. If a claimant receives wages exceeding those set out in the regulations, a presumption arises that she was engaged in substantial gainful activity during that period. 20 C.F.R. § 404.1574(b)(2), 416.974(b)(2). On the other hand, if the claimant's earnings are less than the amount necessary to establish a presumption of substantial gainful activity, the ALJ "will generally consider . . . that [the claimant has] not engaged in substantial gainful activity." *Id.* §§ 404.1574(b)(3)(i), 416.974(b)(3)(i).

In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 20, 2018 (i.e., the alleged onset date). (R. at 35.) Although the record and Plaintiff's testimony establishes that Plaintiff worked part-time after the alleged onset date, the ALJ determined that her earnings records did not rise to the level of substantial gainful activity. (R. at 35, 62-64, 274-278.) Upon review, the ALJ's step one determination is supported by substantial evidence.

### B. Step Two Findings.

At step two, the ALJ determined whether Plaintiff suffered from a severe impairment or combination of impairments. (R. at 35.) The regulations define a "severe impairment" or

combination of severe impairments as those "which significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). A "non-severe impairment" is defined as one that "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1522(a), 419.922(a). "Basic work activities" are defined as functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to co-workers and supervisors, and dealing with changes in a routine work setting. *Id.* §§ 404.1522(b), 416.922(b). If a claimant is not suffering from any severe impairment(s), she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If a claimant is found to be suffering from a severe impairment(s), the analysis proceeds to the next step. *Id.*

Here, the ALJ determined that Plaintiff had the following severe impairments pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c): breast cancer, congestive heart failure, migraines, peripheral neuropathy, irritable bowel syndrome, asthma, depression, anxiety, conversion disorder, and post-traumatic stress disorder. (R. at 35.) Additionally, the ALJ determined Plaintiff's carpal tunnel syndrome and obesity were non-severe impairments because they had no more than "a minimal effect on [Plaintiff's] functional capabilities." (R. at 36.) The ALJ explained and discussed throughout the sequential analysis Plaintiff's medical history and testimony in support of his findings. Therefore, the Court finds that substantial evidence supports the ALJ's step two determination.

    **C.**     **Step Three Findings.**

At step three, the ALJ must determine whether Plaintiff has an impairment that "meets or equals one of [the] listings in appendix 1 of [20 C.F.R. Pt. 404, Subpt. P] and meets the duration

requirement." *Radford v. Colvin*, 734 F.3d 288, 293 (4th Cir. 2013) (quoting 20 C.F.R. 404.1520(a)(4)(iii)). "The listings set out at [20 C.F.R. Pt. 404, Subpt. P, App'x 1], are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Sullivan v. Zebley*, 493 U.S. 521, 529-30, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). "In order to satisfy a listing and qualify for benefits, a person must meet all of the medical criteria in a particular listing." *Bennett v. Sullivan*, 917 F.2d 157, 160 (4th Cir. 1990) (citing *Zebley*, 493 U.S. at 530, and 20 C.F.R. § 404.1526(a)). The burden remains with the claimant at step three to establish that her impairments meet or medically equal one of the listed impairments. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993).

Here, the ALJ considered Plaintiff's impairments and determined that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520 (d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. at 36.) Specifically, he found that Plaintiff's impairments did not satisfy the requirements of Listing 1.02 (major dysfunction of a joint), Listing 3.03 (asthma), Listing 4.02 (chronic heart failure), Listing 5.06 (inflammatory bowel disease), Listing 11.08 (soft tissue injury), Listing 11.14 (peripheral neuropathy), Listing 12.04 (depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-compulsive disorders), Listing 12.07 (somatic symptom and related disorders), Listing 12.15 (trauma and stressor-related disorders), Listing 13.10 (breast cancer), and Listing 14.09 (inflammatory arthritis). (R. at 36-40.) In doing so, the ALJ carefully considered Plaintiff's testimony and medical history, and articulated his reasoning for why Plaintiff's impairments did not meet or equal one of the listings. The Court finds that substantial evidence supports his findings.

### D. Residual Functional Capacity Determination.

The ALJ then determined Plaintiff's residual functional capacity by first identifying her functional limitations or restrictions and, second, assessing her ability to do sustained work-related activities on a regular and continuing basis. (R. at 40.) *See also* 20 C.F.R. §§ 404.1545(a), 416.945(a). Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.97(b), but with the following limitations:

> [Plaintiff] is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently. She is able to stand and/or walk six hours in an eight-hour workday and sit six or more hours in an eight-hour workday. She is able to occasionally climb ramps, stairs, ladders, ropes and scaffolds. [Plaintiff] is able to occasionally balance, stoop, kneel, crouch and crawl. She is occasionally able to tolerate exposure to extremes of heat, and/or humidity and wetness, and occasionally tolerate exposure to respiratory irritants such as dust, odors, gasses and fumes, as well as occasionally tolerate exposure to hazards such as machinery. [Plaintiff] is able to understand, remember and carry out simple and routine work related instructions, and concentrate for periods of two hours on work related tasks before requiring a break. She is able to work with the general public, coworkers, and supervisors occasionally. [Plaintiff] is able to perform non-production pace/non-assembly line pace jobs, with occasional workplace changes and occasional decision-making and no responsibility for the safety of others, and is able to perform jobs that may be discontinued safely on an emergent basis should [Plaintiff] require the use of a restroom while maintaining time on task standards.

(R. at 40.)

The ALJ explained that he determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with the regulations. (R. at 40-49.) The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s)" in accordance with the regulations. (R. at 40-49.) Based on his

10

residual functional capacity findings, the ALJ concluded at step four that Plaintiff is unable to perform any of her past relevant work. (R. at 49.)

### E. Step Five Findings.

Finally, at step five, the ALJ evaluated whether Plaintiff could perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this part of the sequential evaluation process, the burden shifts from the claimant to the Commissioner to determine whether other work in the national economy exists that the claimant can perform. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). To meet this burden, the ALJ may rely on the Dictionary of Occupational Titles ("DOT") and may elicit testimony from a vocational expert to "address complex aspects of the employment determination, including the expert's observations of what a particular job requires in practice or the availability of given positions in the national economy." *Id.* If the vocational expert's testimony conflicts with the DOT, the ALJ must "inquire, on the record, . . . whether the vocational expert's testimony conflicts with the [DOT], and also requires the ALJ elicit a reasonable explanation for and resolve conflicts between the expert's testimony and the DOT." *Id.* at 207-08 (citing SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000)) (internal quotations omitted). The ALJ has an affirmative and independent duty to identify and resolve apparent conflicts between the vocational expert's testimony and the DOT. *Id.* If the ALJ resolves the conflict by determining and explaining why the vocational expert's explanation is reasonable, then the ALJ can rely on the vocational expert's testimony to support the ALJ's disability determination. *Id.*

In this case, the ALJ considered the testimony of a vocational expert, who testified that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff can perform the requirements of occupations such as marker, route clerk, and housekeeper. (R. 50-51.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 51.)

## IV. ANALYSIS

Pursuant to the Court's Order, entered May 3, 2022, Plaintiff was directed to file a Motion for Summary Judgment. (ECF No. 16.) Plaintiff untimely filed a one-page, pro se letter on June 23, 2022. (ECF No. 18) ("Pl.'s Mot.") On July 18, 2022, counsel for Defendant contacted Plaintiff, who confirmed that she intended for this letter to constitute her motion for summary judgment. (*See* Mot. Est. Deadline for Def.'s Mot. Summ. J. ¶ 5 (ECF No. 19).) Accordingly, the Court will interpret Plaintiff's submission (ECF No. 18) as her Motion for Summary Judgment.

In her Motion for Summary Judgment, Plaintiff does not allege any discernible error on the part of the ALJ with respect to the ALJ's decision in this case. Instead, Plaintiff appears simply to reiterate her alleged impairments and the limitations they cause. (Pl.'s Mot. at 1.) Specifically, Plaintiff makes the following arguments, provided verbatim in part, in an effort to obtain review of the ALJ's decision:

1. Plaintiff continued to work while treating for her impairments because she was denied unemployment and disability benefits.

2. While working, Plaintiff suffered "what we thought was a stroke but its called conversion disorder and high blood pressure[.]"

3. "[N]othing has actually gotten better because of my arthritis which has enhanced with the chemo treatments, now I have a new left hip and I'm in pain when it's cold/or rainy out."

4. Plaintiff has been afflicted with migraines, arthritis, and her mental health impairments since she was a child.

5. "I do my best to be as active as possible but every time I turn around I have to have surgery."

6. Plaintiff scheduled a follow up appointment with her orthopedist in August 2022 to discuss her left hip surgery and to evaluate her left hand for possible surgery.

7. "I finally got my medication adjusted for my depression and anxiety."

8. Plaintiff is in "pain all the time" and takes "a lot of pills".

12

> 9. She experienced a pulmonary embolism "that came out of nowhere and the doctors can't seem to find exactly where or why it appeared, so I'm taking Eliquis forever."
>
> 10. Plaintiff's breast cancer "was carcinoma" but the ALJ found she "didn't have it" and "denied [her] on that as well because it was stage one."

(Pl.'s Mot. at 1.)

Additionally, Plaintiff attached a series of medical record exhibits to her Motion for Summary Judgment. (ECF No. 18-1.) In particular, the exhibits appear to document radiological imaging of Plaintiff's pelvis and left hip on April 11, 2022 (ECF No. 18-1 at 1), x-rays of her left hand verified by her treating doctor on June 19, 2022 (ECF No. 18-1 at 2), and a summary of her physical and mental impairments as reported on various dates before and during the relevant period (ECF No. 18-1 at 3-5.)

Defendant responds that this Court should grant summary judgment in favor of Defendant because "there is no genuine issue as to any material fact and the Commissioner's final decision is supported by substantial evidence." (Def.'s Mem. at 1.) For the reasons that follow, this Court finds that the ALJ did not err because he supported his decision with substantial evidence and adequately explained his conclusion.

### A. The ALJ Did Not Err in Denying Plaintiff's Application for Benefits and Substantial Evidence Supports His Findings.

In her Complaint, Plaintiff contends that the ALJ's factual findings are not supported by substantial evidence in the record because:

> the Commissioner has not taking [sic] in [sic] fact of my other medical issues past and current. The fact that these medical issues are not [unintelligible] manageable to a point some of the other require me to have more surgery, pills, doctors, and tests. And with the chemo treatments, it's just made things worst [sic].

(Compl. at 3.)

13

In challenging the ALJ's decision, Plaintiff fails to identify any error made by the ALJ in his findings, but merely reiterates some of the evidence previously considered by the ALJ, including the subjective and medical findings. In fact, Plaintiff concedes in her Complaint that "[t]he Commissioner's decision was not so much of an error but lack of properly introduce [sic] to evidence found and reported." (Compl. at 3.)

Upon review of the ALJ's decision, the Court finds that the ALJ considered both Plaintiff's physical and mental impairments, and appropriately accounted for them in his residual functional capacity findings. First, the ALJ thoroughly summarized the available medical history, including Plaintiff's history of breast cancer and chemotherapy treatment, which resulted in surgeries and visits to the emergency room. (R. at 41-42.) The ALJ also recounted Plaintiff's treatment for neuropathy in her hands and feet, headaches and migraines, irritable bowel syndrome, degenerative changes in her spine, hip, back, and abdominal pain, and congestive heart failure. (R. at 42-46.) Throughout the ALJ's summary of the longitudinal medical record, he provided ample detail regarding Plaintiff's subjective reports, the objective findings, and symptom improvement with medication. (R. at 42-46.) He also included the findings of various radiological imaging examinations. (R. at 42-46.)

In assessing the extent to which Plaintiff's mental impairments limit her ability to do work-related activities, the ALJ considered Plaintiff's testimony and adult function reports. (R. at 38-39.) Specifically, the ALJ noted that Plaintiff endorsed being able to watch television and movies, travel, go for walks, take medications without needing to be reminded, manage her finances, drive a car, schedule and attend appointments, shop online and in stores, follow verbal and written directions, prepare meals, and perform various household chores. (R. at 38.) He also explained that Plaintiff affirmed she was able to take care of her personal hygiene and other personal needs, such

14

as following instructions from medical professionals. (R. at 38-39.) Moreover, the ALJ found "little mention from any of her doctors of any difficulties" in the areas of interacting with others, nor was there support for more than a moderate limitation in concentration, persistence, or maintaining pace and adapting or managing oneself. (R. at 39.)

The ALJ also accounted for Plaintiff's subjective complaints when assessing her physical impairments. For instance, the ALJ acknowledged Plaintiff's testimony regarding the limitations imposed by her impairments, which impacted her ability to work and sleep. (R. at 41.) He determined that, based on the evidence, Plaintiff's allegations that she was incapable of all work activity was not credible, and that her "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent" and lack support. (R. at 46.) According to the ALJ:

> The treatment notes, examination findings and objective diagnostic testing results simply do not support the degree of limitation that [Plaintiff] alleged. Other evidence further undermines the consistency of [Plaintiff's] allegations of debilitating physical and mental symptoms. In particular, despite alleging significant functional limitations, repeated physical and mental examinations have failed to consistently reveal results that would be expected with the degree of limitation alleged. As noted above, the record shows that [Plaintiff] performed (and currently performs) work with significant physical requirements (including lifting, bending, standing, walking, and reaching) subsequent to the alleged disability onset date. Although this work activity was not at a level constituting substantial gainful activity, it nevertheless indicates greater capabilities during those periods than currently alleged by [Plaintiff]. The record does not contain any opinions from treating or examining physicians indicating that [Plaintiff] is disabled or even has limitations greater than those determined in this decision. While [Plaintiff] has some physical and mental impairments, there is no evidence that her impairments cannot be controlled or remedied with medication and appropriate treatment. Based on this record, the undersigned determines that [Plaintiff]'s impairments would not prevent her from doing work within the residual functional capacity provided above.

(R. at 46-47) (citations omitted.)

With respect to the medical opinion evidence, the ALJ considered the medical opinions of state agency medical consultants Brian Strain, M.D. and Robert McGuffin, M.D., who both limited Plaintiff to a light range of work. (R. at 47-48.) The ALJ also accounted for the state agency psychological consultants' opinions, which he found to be persuasive. (R. at 48-49.) In fact, the ALJ notably gave Plaintiff "the maximum benefit" by "further assigning additional mental limitations as detailed" in the residual functional capacity. (R. at 49.)

The ALJ proceeded to evaluate the opinion of Hetal Vachhani, M.D. ("Dr. Vachhani"). (R. at 49.) On September 17, 2018, Dr. Vachhani "asserted that [Plaintiff] could resume work, and a letter to this effect was provided to [Plaintiff]." (R. at 49, 1061.) Although Dr. Vachhani's medical opinion was vague and did not offer specific functional limitations, the ALJ nonetheless found it partially persuasive because of Dr. Vachhani's treating relationship with Plaintiff. (R. at 49.) However, the ALJ once again "assigned [Plaintiff] the maximum benefit by further assigning greater physical and mental limitations as detailed above in the residual functional capacity." (R. at 49.) Finally, the ALJ considered and summarized the medical opinion of Kris Williams, M.D., who opined that Plaintiff was capable of performing work-related activities, but would have "intermittent episodes of difficulty speaking, etiology unclear, with testing in progress." (R. at 49.) The ALJ found this opinion partially persuasive and concluded that, "[a]lthough she has some deficits, she can perform simple work." (R. at 49.)

Ultimately, the ALJ concluded that, although Plaintiff:

> has some physical and mental impairments and symptoms, a thorough review of the evidence does not corroborate the degree of severity alleged. Instead, the objective medical evidence, the opinions already discussed above, and [Plaintiff's] actual range of daily activities demonstrate that [Plaintiff] has the residual functional capacity to perform a range of light work, as described above.

(R. at 49.) Upon consideration of the ALJ's decision in light of the regulations, the Court finds the ALJ did not err, as he followed the correct legal framework and exhaustively explained the basis for his conclusions, which are supported by substantial evidence. While Plaintiff may disagree with the way in which the ALJ assessed and considered the evidence contained in the record, it is not this Court's role to re-weigh conflicting opinions or substitute its judgment for that of the ALJ. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Moreover, Plaintiff has failed to allege any error by the ALJ that would require the Court to remand for further proceedings.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 18) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 21) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge David J. Novak and all counsel of record. The clerk is further directed to mail a copy of this Report and Recommendation to the pro se Plaintiff at her address of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: November 29, 2022